# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

MELISSA TRAYLOR, on behalf of                                    PLAINTIFF
Christopher Traylor

v.                          NO. 2:11-CV-00226 HDY

MICHAEL J. ASTRUE, Commissioner                                  DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Melissa Traylor commenced the case at bar on behalf of Christopher Traylor by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, Melissa Traylor challenged the final decision of the Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

The ALJ found, inter alia, that Christopher Traylor, who was twenty-nine years old on the alleged disability date, has severe impairments in the form of a back disorder, hypertension, and "Sprains and Strains and Cardiomyopathies," see Transcript at 14, but can perform light work with some limitation. She found that he cannot perform his past relevant work, but there is work he can perform. She concluded that he has not been under a disability at any time through the date of her decision and denied his claims for disability insurance benefits and supplemental security income payments.

Melissa Traylor maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Melissa Traylor so maintains because the ALJ allegedly did not evaluate the credibility of Christopher Traylor's subjective complaints in accordance with Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[1]

The ALJ is obligated to assess the claimant's residual functional capacity, which is simply a determination of "the most [the claimant] can do despite [his] limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). In making the assessment, the ALJ must evaluate the claimant's credibility regarding his subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). In doing so, the ALJ must consider, "in addition to objective medical evidence, any evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski]. A claimant's complaints may be discounted if there are inconsistencies in the evidence as a whole. See Id. at 1322 [citing Polaski]. "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

---

[1] Melissa Traylor specifically maintains that the ALJ's decision rests largely upon the determination that Christopher Traylor was not telling the truth regarding the severity of his impairments and resulting limitations. Melissa Traylor maintains that the only inconsistencies the ALJ identified as grounds for discrediting Christopher Traylor's complaints, though, were "the ones [she] claimed exist between [his] complaints and the medical evidence." See Document 12 at 18. Melissa Traylor maintains that there are no such inconsistencies, noting that two chiropractors offered opinions supporting Christopher Traylor's complaints. Melissa Traylor maintains that had the ALJ given proper weight to all of the medical evidence, including the chiropractors' opinions, and the other Polaski factors, she would have found that Christopher Traylor was telling the truth regarding the severity of his impairments and resulting limitations.

The ALJ assessed Christopher Traylor's residual functional capacity and found that he can perform light work with the following limitations: he must have "the option to sit/stand every [thirty] minutes, [and] must avoid concentrations of dust, fumes, gases, odor, smoke, poor ventilation, or other airborne irritants." See Transcript at 15. In making the assessment, she evaluated the credibility of his subjective complaints. She represented that she did so based on the factors identified in several code sections and Social Security rulings, e.g., 20 C.F.R. 404.1529, 20 C.F.R. 416.929, and Social Security Ruling 96-7p, all of which contain factors that mirror those found in Polaski. She found that although he has been in "constant pain" since an August of 2006 motor vehicle accident, see Transcript at 16, his statements concerning the intensity, persistence, and limiting effects of his pain were not entirely credible. With regard to the "opinion evidence," she found the following:

> … the undersigned gave greater weight to the opinions of the claimant's treating physician and clinicians due to their areas of expertise, longitudinal treatment history, and frequency of contact with the claimant. However, the undersigned rejects the opinion of Thomas M. Hayde, D.C., which indicates that the claimant is permanently disabled and unable to do any work that requires sitting or standing longer than [fifteen] minutes, because it is inconsistent with the objective medical evidence of record …

See Transcript at 19.[2]

---

[2] Thomas M. Hayde, a chiropractor at the Traylor Chiropractic Clinic, opined that Christopher Traylor is permanently disabled because of carpal tunnel syndrome, disc herniation in his neck, ligament damage, damage caused by a heart attack, and hypertension. See Transcript at 405.

The ALJ's evaluation of Christopher Traylor's credibility regarding his subjective complaints is supported by substantial evidence on the record as a whole. She considered all of the evidence and did so in light of the Polaski factors.

The ALJ began by considering the medical evidence. She could and did find that it was unremarkable. For example, the record contains the findings of Dr. Sudhir Kumar ("Kumar"), M.D., who examined Christopher Traylor on a number of occasions for his complaints of headaches, hypertension, and pain in his neck and arm. See Transcript at 237-242. Kumar repeatedly found that Christopher Traylor's "C-spine flexion was painful" and his blood pressure was elevated. Kumar prescribed medication for Christopher Traylor's pain and hypertension and encouraged him to monitor his blood pressure. It is not clear what improvement he thereafter made, but Kumar noted on at least two occasions that Christopher Traylor was not taking his medication as prescribed. See Transcript at 238, 240.

The record also contains the findings of Dr. Calin Savu ("Savu"), M.D., who examined Christopher Traylor on at least four occasions. Savu saw Christopher Traylor in February of 2007 at which time Savu observed that Christopher Traylor was "in no apparent distress without overt pain behaviors except for neck stiffness with upper body movement en-bloc." See Transcript at 269. Savu observed that Christopher Traylor had a normal range of motion in his upper and lower extremities and normal strength in all of his major muscle groups. Savu opined that Christopher Traylor's symptoms, i.e., neck stiffness, were a "[f]airly typical description of a whiplash injury ..." See Transcript at

269. Savu's therapy plan was as follows: "A series of diagnostic injections including cervical medical branch blocks will probably help us positively identify the above-mentioned processes and justify a series of radiofrequency neurotomies which will very likely alleviate [Christopher Traylor's] symptoms." <u>See</u> Transcript at 269. Savu also recommended physical therapy. Savu saw Christopher Traylor again on three occasions between October of 2008 and November of 2008, <u>see</u> Transcript at 279, 280, 281-282, and each time, Savu noted that no significant changes had occurred in Christopher Traylor's condition.

The record also contains the findings of Dr. John P. Howser ("Howser"), M.D., who examined Christopher Traylor at the request of a chiropractor. In Howser's notes dated November of 2007, he offered the following findings:

> On examination, there was moderate restricted range of motion of the cervical spine with pain on flexion, extension and rotation. The Adson's test was positive bilaterally. The deep tendon reflexes were normal. There were no weaknesses. There was vague decreased sensation, nondermatome over the thoracic and lumbar areas including both arms and legs. Babinski's were downgoing. There was an abnormal tender TMJ bilaterally. The back examination revealed moderate restricted range of motion of the lumbar spine with pain greater on extension. Straight leg rising was 45 degrees bilaterally with hamstring tightness.

<u>See</u> Transcript at 261. Howser ordered an MRI of Christopher Traylor's cervical spine, and it revealed a "[c]entral 3 mm focal disk protrusion/small herniation at C3 …," mild degenerative changes at C5 and C6, a tiny insignificant right paracentral disk protrusion at C5, and an insignificant protrusion on the left at C6. <u>See</u> Transcript at 250.

The record contains additional radiologically testing, specifically, a June of 2009 MRI of Christopher Traylor's lumbar spine. See Transcript at 403. The MRI revealed no significant abnormality at L1-L4 and only a mild diffuse disc bulge at L5-S1.

The record also contains findings pertaining to Christopher Traylor's history of cardiomyopathies. See Transcript at 371-388. The record indicates that he has a history of chest pains and suffered a myocardial infarction in November of 2008. See Transcript at 383. The ALJ could and did find, though, that Christopher Traylor's condition improved with treatment. For instance, during a December of 2008 examination at the Forrest City Medical Center, an attending physician found the following with regard to Christopher Traylor's complaints of chest pain: "His EKGs showed no acute signs of ischemia. His telemetry showed normal sinus rhythm throughout his hospital stay. Again, he had no further episodes of chest pain. He states that Ativan seemed to relieve all of his pressure in his chest pain and his anxiety." See Transcript at 384.

The foregoing medical findings and opinions are consistent with the findings and opinions of Christopher Traylor's residual functional capacity offered by the two state agency physicians. Drs. Wheatly Beard and Jerry Thomas agreed that Christopher Traylor can occasionally lift and/or carry twenty pounds, can frequently lift and/or carry ten pounds, can stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday, can sit (with normal breaks) for a total of about six hours in an eight hour workday, and has an unlimited ability to push and/or pull. See Transcript at 352, 439.

Case 2:11-cv-00226-HDY   Document 14   Filed 01/22/13   Page 7 of 10

Melissa Traylor faults the ALJ for failing to give proper weight to the opinions of two chiropractors, one of whom assigned Christopher Traylor a twenty-three percent whole body impairment, see Transcript at 221, and another of whom opined that he is "completely and totally disabled," see Transcript at 405.[3] For at least two reasons, the ALJ did not err. First, "[a] chiropractor is not among the 'acceptable sources' of medical evidence upon which the ALJ may rely to establish a medically determinable impairment." See Scott v. Astrue, 2009 WL 4897752 at 3 n.1 (E.D.Ark. 2009) (Wright, J.) [internal quotations and citations omitted]. Such a source may only be used to show "how an impairment affects a claimant's ability to work." See Id. [citations omitted]. The ALJ could and did disregard the chiropractors' opinions to the extent they do not show how an impairment affects Christopher Traylor's ability to work.

Second, the ALJ could and did find that the chiropractors' opinions, particularly those offered by Dr. Thomas M. Hayde ("Hayde"), D.C., were inconsistent with the medical evidence. For instance, Hayde opined that Christopher Traylor is "completely and totally disabled," in part, because of carpal tunnel syndrome. EMG testing revealed, though, that Christopher Traylor has only "mild right carpal tunnel syndrome." See Transcript at 255. Hayde opined that Christopher Traylor is "completely and totally disabled," in part, because of disc herniation in his neck. It is true he has disc herniation

---

[3] The second of the two chiropractors supported his conclusion with the following findings: "At the present time, Mr. Traylor is unable to do any work that requires sitting or standing longer than [fifteen] minutes or so. He cannot travel in vehicles without severe exacerbation of pain. He cannot walk more than a block or so due to his heart condition. He is in constant, severe pain." See Transcript at 405.

in his neck, but Howser noted that the herniation at C3 was "small." See Transcript at 250. Hayde opined that Christopher Traylor is "completely and totally disabled," in part, because of hypertension and the effects of a heart attack. The ALJ could and did question Hayde's qualifications to offer those opinions as other medical professionals enjoyed a greater expertise in those areas. Although Hayde offered some support for his opinions by attaching the findings of other medical professionals, see Transcript at 406-438, he did not specifically indicate which findings supported his opinions.

In evaluating Christopher Traylor's credibility, the ALJ also considered the non-medical evidence, e.g., his daily activities, see Transcript at 15-16, 18-19; the duration, frequency, and intensity of his pain, see Transcript at 15-18; his medication and their side effects; see Transcript at 15-17; the non-medical treatment he receives, see Transcript at 15, 17; and precipitating and aggravating factors, see Transcript at 15. She could and did find that the non-medical evidence was unremarkable. With specific regard to Christopher Traylor's daily activities, which appear to be the focal point of Melissa Traylor's challenge to the ALJ's credibility findings, the ALJ could and did find that Christopher Traylor's daily activities are not consistent with the evidence. For instance, they are not consistent with some of the medical evidence, specifically, with Savu's findings and the findings of the MRI of Christopher Traylor's cervical spine. Those findings do not support the assertion that he is experiencing disabling pain. In addition, his testimony regarding his typical day is capable of more than one characterization. At the administrative hearing, he testified that his typical day consists of the following:

>A. Well, when I get up, I try to sit up for – well, I get up and brush my teeth and then I try and sit up for – 30 minutes or so. And then I'll – and lay down on the couch. And I lay down for an hour, an hour and a half. And then I have to get up and walk for maybe, I don't know, maybe 10 minutes or so. And … then I have to lay back down and – about – go through that routine until about 3:00 o'clock. I go get my girlfriend's little girl from school, at Calvary and come back home and lay down. And then go back through that routine all day, until nighttime. And then at night, when I go to sleep, I wake up every hour and a half or so. And I have to get up and walk around.
>
>Q. Okay.
>
>A. From the pain. …

See Transcript at 40. There is little other evidence to support such a severe degree of limitation in Christopher Traylor's activities during the typical day. Given the lack of such evidence, it is possible to characterize his testimony as something less than forthright.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, the Court finds that Melissa Traylor has not offered a legitimate reason for deviating from the aforementioned rule. The evaluation of Christopher Traylor's credibility made by the ALJ is one of the acceptable interpretations of all the evidence.

In conclusion, there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Melissa Traylor's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___22___ day of January, 2013.

_/s/ H. D._
_____
UNITED STATES MAGISTRATE JUDGE